# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CARMEN SUAREZ-SMITH, | Case No.: 2:11-cv-00201-GMN-PAL |
| Plaintiff, | **ORDER** |
| vs. | |
| BAC HOME LOANS SERVICING, LP; RECONTRUST COMPANY, N.A.; BANK OF NEW YORK MELLON; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOES 1 through 100, inclusive, | |
| Defendants. | |

This is a civil action initially filed in state court by Carmen Suarez-Smith, Plaintiff in proper person,[1] against BAC Home Loans Servicing, LP ("BAC"),[2] ReconTrust Company, N.A. ("ReconTrust"), Bank of New York Mellon; Mortgage Electronic Registration Systems, Inc. ("MERS"), et al. (collectively "Defendants"). (ECF No. 1). Defendants have brought a motion to dismiss Plaintiff's claims. (ECF No. 4). Plaintiff filed an opposition to which Defendants replied. (ECF Nos. 10, 17.) The Court will GRANT Defendants' Motion to Dismiss.

/ / /

---

[1] Plaintiff's Complaint appears to be a form complaint or possibly written by a third party as it bears the name of a different plaintiff in a separate proceeding. See page 19, paragraph 5 of Plaintiff's Complaint (requesting "[t]hat the Court quiet title as to all claimants except for Plaintiff Eva M. Futch, who is the rightful property owner, subject to any lawful encumbrance") and compare to page 20, paragraph 5 of the complaint in *Futch v. BAC Home Loans Servicing, LP et al,* No. 2:10-cv-02256-KJD-GWF, 2011 WL 4544006 (D. Nev. September 29, 2011). Also, entire sections of the two complaints are virtually identical. The section claiming, "The Recorded 'Notice of Default' is False" bears the same date (July 9, 2010) in both complaints. However, the Notice of Default in this case was actually recorded on June 10, 2009. (*See* "Notice of Default" Ex. 1 to Pl.'s Complaint; "Notice of Default" Ex. B to Defs.' Mot. to Dismiss, ECF No. 4-2.).

[2] BAC Home Loans Servicing, LP has been merged into Bank of America, N.A., and will be referred to as "Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP." (*See* Defs.' Notice of Merger and Name Change, ECF No. 21).

## I.   BACKGROUND

Plaintiff alleges four causes of action: (1) wrongful foreclosure; (2) civil conspiracy; (3) quiet title; and (4) injunctive relief.[3]  Within her Complaint, Plaintiff also appears to allege a violation of the Real Estate Settlement Procedures Act (RESPA) in relation to her October 13, 2010, letter styled as a Qualified Written Request ("QWR"). (*See* Ex. 3 to Compl.).

Under the heading, "ALLEGATIONS COMMON TO ALL CAUSES OF ACTION," Plaintiff lists the following:

>    A.   The Note has been Separated from the Deed of Trust, and therefore, both Instruments are Unenforceable;
>    B.   The Original Promissory Note must be Produced to Prove Ownership; Rights of Enforcement; and Whether it is still Secured by the Deed of Trust;
>    C.   The Recorded "Notice of Default" is False;
>    D.   Nevada's Non-Judicial Process is Improper for Securitized Loans.

The subject property is located at 11003 Dornoch Castle Street, Las Vegas, Nevada 89141, APN 177-31-712-035.  Though Plaintiff does not provide a copy of the Deed of Trust ("Deed") in her complaint, Defendants have provided a copy of the Deed, as recorded in Clark County on December 20, 2006. ("Deed of Trust" Ex. A to Defs.' Mot. to Dismiss, ECF No. 4-1.)[4]

/ / /

/ / /

---

[3] A request for injunctive relief is a remedy, not an independent cause of action, and is subject to dismissal for failure to state a claim upon which relief may be granted. *See In re Wal-Mart Wage and Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007) (clarifying that "[a]lthough denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief" and "is not an independent ground for relief").

[4] The Court takes judicial notice of Exs. A-E of Defendants' Motion to Dismiss. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  The Deed and foreclosure notices are public records in the Clark County Recorder's office.

The Deed secured a $375,000.00 loan dated December 11, 2006.[5] (Deed at 2.) The "Lender" is listed as Countrywide Home Loans, Inc. *Id*. ReconTrust is identified as the trustee. *Id*. MERS is identified as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." *Id*.

A Notice of Default was recorded by ReconTrust on June 10, 2009, alleging Plaintiff's failure to pay the amount due on the note as of December 1, 2008. (ECF No. 4-2; Ex. 1 to Compl.) Plaintiff does not dispute that she has failed to pay the amount due on the note.

ReconTrust recorded a Notice of Trustee's Sale on September 15, 2010 ("First Notice") and another Notice of Trustee's Sale on January 10, 2011 ("Second Notice"). (Exs. C-D to Defs.' Mot. to Dismiss, ECF Nos. 4-3 – 4-4.) Plaintiff recorded a *lis pendens* on January 15, 2011. (Ex. E to Defs.' Mot. to Dismiss, ECF No. 4-5.)

Plaintiff sent a letter to Bank of America dated October 13, 2010, styled as a "'Qualified Written Request' in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e)." (Ex. 3 to Compl.)

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds

---

[5] The Deed lists "THOMAS A SMITH, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY" as the "Borrower." (Deed at 2:¶(B).) However, "A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY" is crossed out, and written underneath is "and Carmen Suarez Smith, Husband and wife." *Id*. Two signatures appear below the writing. *Id*. Likewise, the signature page of the Deed has "Thomas A. Smith" typed on one of the signature lines accompanied by a signature, and "Carmen Suarez Smith" written on another signature line accompanied by a signature. *Id*. at 15. Plaintiff claims to pursue this action under Chapter 134 of Nevada Revised Statutes "as the co-signer on the subject Deed of Trust, and as successor to her late husband, Thomas A. Smith, who passed away December 3, 2008." (Compl. 1-2:¶1.)

on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir.2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Prolix, confusing complaints" should be dismissed because "they impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir.1996). Mindful of the fact that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court will view Plaintiffs' pleadings with the appropriate degree of leniency.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which

are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III. ANALYSIS

#### A. Wrongful Foreclosure

Plaintiff does not dispute that she has failed to pay the amount due on the note. However, she alleges that the Notice of Default is false and fraudulent "for a myriad of reasons" including: the Defendants "received immense payouts in the form of federal bailout monies" etc.; the "'lender' received a mortgage bond NOT SIGNED BY THE BORROWER but issued by a separate entity, which bond states that this new entity will pay the lender from 'receivables'" and that "Plaintiff's account is entitled to be offset by at least a portion of those immense funds and 'receivables.'"; and that the note was securitized, which invalidates the right of the beneficiary to foreclose. (Compl. 9-11, 13-15.)

Plaintiff also alleges misrepresentation because "[n]owhere in the loan documents was it disclosed that the 'mortgage loan' was in reality a disguised securities transaction, which resulted in Plaintiff making payments that were not credited to the mortgage, but instead, went to pay 'returns' to investors who bought shares in the pooled mortgage-backed security instrument that contained Plaintiff's Note." (Compl. 14.) She also re-alleges that the "Defendants received immense payouts in the form of federal bailout monies" and that "Plaintiff's account should be offset by at least a portion of those immense funds." (*Id*. at 14-15.)

An alleged securitization of a loan does not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course. *See* NRS 107.080; *Chavez v. California Reconveyance Co.*, 2010 WL 2545006, at *2 (D. Nev. 2010) (rejecting an identical argument because "NRS 107.080 does not forbid securitization of a loan."). Therefore, Plaintiff has no claim of wrongful foreclosure because of securitization.

Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The elements of intentional misrepresentation or common law fraud in Nevada are:

(1)  a false representation made by the defendant;
(2)  defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);
(3)  defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
(4)  plaintiff's justifiable reliance upon the misrepresentation; and
(5)  damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992). Virtually identical allegations of fraud were made and rejected in *Joyner v. Bank of America Home Loans*, No. 2:09-CV-2406-

CJ-RJJ, 2010 WL 2953969, at *3 (D. Nev. July 26, 2010). As in *Joyner*, Plaintiff's allegations are generalized claims of fraud, rather than allegations of specific fraudulent representations. Furthermore, as in *Joyner*, Plaintiff's claims are highly implausible or blatantly false, such as the claim that her account should be offset by a portion of the federal bailout monies and the "immense funds" and "receivables" received by Defendants. Accordingly, Plaintiff has failed to state a legally cognizable claim for fraud.

In Nevada, the common law tort of wrongful foreclosure requires Plaintiff to establish that at the time the power of sale was exercised no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale. *Collins v. Union Fed. Sav. & Loan Ass'n.*, 662 P.2d 610, 623 (Nev. 1983). Furthermore, a claim for wrongful foreclosure prior to sale is not actionable. *Huggins v. Quality Loan Servicing, LP*, 2011 WL 310490, at *5 (D. Nev. January 27, 2011).[6] Therefore, Plaintiff has no claim for the common law tort of wrongful foreclosure because she does not allege that she is current on her loan payments, and because a foreclosure sale has not taken place.

B. **Civil Conspiracy**

Under Nevada law, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins*, 662 P.2d at 303; *See also GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001); *In re MERS Litig.,* 744 F.Supp.2d at 1028 (D. Ariz. 2010). "Civil conspiracy is not an independent cause of action – it must arise from some underlying wrong." *Paul Steelman Ltd. V. HKS, Inc.*, No. 2:05-CV-01330-BES-RJJ, 2007 WL 295610, at *3 (D. Nev. 2007). Here, Plaintiff alleges civil conspiracy with the underlying tort

---

[6] *See also, In re Mortg. Elec. Registration Sys. (MERS) Litig.,* 744 F.Supp.2d 1018, 1025 (D. Ariz. 2010) ("[A] claim for wrongful foreclosure does not arise until the power of sale is exercised.") (citing *Collins*, 662 P.2d at 623); *Aguilar v. WMC Mortg. Corp.*, No. 2:09-CV-01416, 2010 WL 185951 at *2 (D. Nev. Jan. 15, 2010) (dismissing claim where "Plaintiffs admit they were delinquent on their mortgage payments.").

of wrongful foreclosure. Because Plaintiff fails to state a claim for wrongful foreclosure, her claim for conspiracy also fails.

### C. Quiet Title

In Nevada, an action to quiet title to real property is an equitable proceeding in which a party seeks to settle a dispute over ownership of property or to remove a cloud upon the title to the property, and is permitted pursuant to Nev. Rev. Stat. § 40.010.[7] *See MacDonald v. Krause*, 362 P.2d 724, 727 (Nev. 1961). Such an action requests a judicial determination of all adverse claims to disputed property. *Del Webb Conservation Holding Corp. v. Tolman*, 44 F.Supp.2d 1105, 1110 (D. Nev. 1999) (citing *Clay v. Scheeline Banking & Trust Co.,* 159 P. 1081, 1082-83 (Nev. 1916)). Here, Plaintiff does not dispute that she has failed to keep current on her mortgage payments, nor does she present a valid claim that the recorded notices of default and sale were invalid. Therefore, Plaintiff's claim for quiet title fails.

### D. RESPA

Plaintiff alleges that she sent a Qualified Written Request ("QWR") to Defendant BAC on October 13, 2010, "in accordance with the Federal RESPA statutes" and attaches a copy of the letter to her Complaint. (Compl. 4:¶13; Ex. 3 to Compl.) Loan servicers such as BAC are obligated to respond to legitimate QWRs under 12 U.S.C. § 2605(e)(1).[8] A QWR is defined as:

---

[7] "An action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." NRS 40.010.

[8] Specifically, loan servicers must follow these statutory guidelines:
"(2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall –
(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
> 
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> 
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Here, Plaintiff's letter does not appear to meet this definition, since her request does not include any statement of the reasons for her belief that the account is in error, nor does it request corrections to the account. Instead, Plaintiff's 21-page letter begins by explaining:

> I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.
> 
> * * *
> 
> Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide.

Plaintiff continues:

> I hereby demand absolute first-hand evidence from you of the original uncertificated or certificated security regarding account #154838040. In

---

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2).

> the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.
>
> I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe, as well as any right to foreclose. By "debt" I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for.
>
> To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date.  Upon receipt of this letter; please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.
>
> I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. I would like you to validate the debt so that it is accurate to the penny!

(Ex. 3 to Compl.)  These excerpts represent the substance of the letter, and demonstrate that Plaintiff's purported "QWR" is in reality a request for a biographical history of her loan. Therefore, Plaintiff's letter adheres neither to the letter nor the spirit of the RESPA statute.

Furthermore, the alleged failure of a servicer to respond to a QWR "alone does not substantiate a RESPA claim… [the borrower] must have also suffered a pecuniary loss to

support a RESPA violation." *Moon v. Countrywide Home Loans, Inc.* 2010 WL 522753, at *5 (D. Nev. 2010).  Here, Plaintiff does not allege that she suffered any pecuniary loss as a result of an alleged failure to respond to the letter.  For these reasons, and to the extent that Plaintiff is alleging a RESPA violation,[9] her claim fails.

### E. Injunctive Relief

Because Plaintiff has failed to state a claim upon which relief may be granted, Plaintiff's request for injunctive relief is denied.  *See In re Wal-Mart Wage and Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007) (clarifying that "[a]lthough denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief" and "is not an independent ground for relief").

## IV. CONCLUSION

Although Plaintiff's Complaint approaches the level of "prolix, confusing complaints" that should be dismissed because "they impose unfair burdens on litigants and judges," the court has "liberally construed the 'inartful pleading'" of Plaintiff, in her capacity as a pro se litigant.  Also, though it is not clear that the deficiencies of the complaint can be cured by amendment, the court will allow for this possibility, and grants leave to amend **not later than close of business on November 14, 2011**.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 4) is **GRANTED**, with Plaintiff's leave to amend her Complaint by close of business on **November 14, 2011**.

DATED this 21st day of October, 2011.

_____
Gloria M. Navarro
United States District Judge

---

[9] In her Opposition to the motion to dismiss (ECF No. 10), Plaintiff clarifies that "since Plaintiff did not make any specific RESPA claim in her Complaint, the Court should simply schedule an evidentiary hearing and compel the Defendants to produce the remainder of the information and documents requested to the extent that same will lead to the resolution of one or more of the issues in dispute herein." (Pl.'s Opp. to Mot. to Dismiss 16:14-17, ECF No. 10.)